## Speise *against* M'Coy.

Money lost by a wager upon an election, and paid over to the winner, cannot be recovered back from him by means of a foreign attachment at the suit of a creditor of the loser.

Money voluntarily paid in discharge of a void obligation cannot be recovered back.

ERROR to the Common Pleas of *Mercer* county.

This was a foreign attachment at the suit of Andrew M'Coy against Ezekiel Sankey, in which John Speise was summoned as garnishee. In answer to the plaintiff's interrogatories, the garnishee deposed that he had made a bet of $1000 with the defendant, Ezekiel Sankey, upon the result of the election: that he was the winner, and that the money had been paid over to him by Sankey before the attachment was served upon him.

The court below was of opinion that the plaintiff was entitled to recover, and rendered a judgment against the garnishee.

*Mahon*, for the plaintiff in error, argued that it was clearly settled that money lost upon a wager and paid over could not be

[Speise v. M'Coy.]

recovered back by the loser; and it would seem to follow necessarily that the loser should not have it in his power to place another in a better situation than he was himself; and the recovery here would be for his advantage, because it would relieve him of so much debt as would be paid by it. *M'Allister* v. *Hoffman*, (16 *Serg. & Rawle* 147); 7 *Watts* 294; 2 *Watts & Serg.* 59; 3 *Ib.* 405.

*Agnew*, contra. The settled principle that a lost wager cannot be recovered back is only applicable to the loser himself, to whom the turpitude of having violated the law attaches; but sound policy would seem to dictate that his creditor, who is perhaps an innocent sufferer by the illegal transaction, should not be prevented from recovering the money. 7 *Watts* 343; 3 *P. R.* 495.

The opinion of the Court was delivered by

GIBSON, C. J.—By the statute in force when this wager was made, the contract was illegal; but after it was executed by payment over, the money could not be recovered back, as was held in *M'Allister* v. *Hoffman*, cited in the argument. But it is said that the court went, in that case, on the turpitude of the parties which affected them individually,—an objection which does not lie to the plaintiff in this instance,—and that, as the contract was null by the letter of the statute, repetition might be had of the money in the hands of the winner as the proper money of the loser. The court, however, objected to the action, not merely for the individual disability of the plaintiff, but for the impurity of the contract which had, from all time, prevented courts of justice from handling such a thing, or anything growing out of it. An executor or administrator of such a loser, would not be allowed to recover back money so paid even for the benefit of creditors; for it could not be told that the decedent's kindred or legatees would not share in the benefit also; and the same effect would be produced by sustaining an attachment in the loser's lifetime, because he would be exonerated by it *pro tanto* from payment of a debt. What more easy than to elude his personal disability, if the difficulty consisted in that, by procuring a convenient creditor to pay himself out of the money in the winner's hands by the instrumentality of an attachment, and thus enable the loser to keep just so much in his pocket, which he would else be compelled to disburse? An attaching creditor's recovery would inevitably inure to the benefit of his debtor. There is besides another principle to be met, which is decisive of the cause, independent of considerations that are personal to the parties. By permitting the money to pass into the hands of the winner, the loser voluntarily paid a debt which, though void as to its legal obligation, has the effect of preventing a recovery back. *Munt* v. *Stokes*, (4 *T. R.* 561), is in principle the case before us. That was an action to recover back money paid on a *respondentia* bond which was void by statute; and Lord

Kenyon, having observed that the contract was *malum prohibitum,* and not *malum in se,* said: "But the ground on which I go is this, that there was no misrepresentation, or any improper conduct by the defendants, to extort the money from the plaintiffs; but the plaintiffs, knowing the whole transaction, and the law also, as they were bound to do, voluntarily paid it. There was nothing contrary to conscience in the defendant's receiving the money which they had advanced; the plaintiffs are therefore entitled neither in law nor equity to recover it back." Like the bond in that case, a wager on the event of an election is not *malum in se,* but *malum prohibitum;* and there is no more well-founded objection in morals to the receipt and retention of the money paid on the one of them than on the other, after the risk has been run which was the inducement to the contract. Now the bar to an action for the recovery of it back is not want of individual capacity to sue, but want of a cause of action. Still it is urged that such payment over is fraudulent as to creditors by the 13 Eliz. c. 5, inasmuch as it is in effect a gift of the money. Supposing it to be a gift, as it is in effect, it follows not that it is within the purview of that statute, though the donee be not a child, provided the donor were not indebted at the time; and that the loser in this instance owed a shilling, is no part of the case. That we have not been disposed to follow out the stern interpretation put on the statutes of Elizabeth by the British judges, is manifest from the decision in *Lancaster* v. *Dolan,* (1 *Rawle* 231), that a voluntary conveyance is good against a subsequent purchaser with notice. Even those judges themselves evinced, in their earlier decisions, a degree of indulgence to gifts against subsequent creditors, which they denied to gifts against subsequent purchasers; but Lord Hardwicke, it seems, pared it down till it reached no further than a family settlement by a father after children born; and perhaps the decisions of the English Chancellors in regard to the distinction can scarce be reconciled. The difference between the two statutes in the tone of their construction is not very great; still it is something, and as we have already relaxed it as to the one, it affords a stronger reason for relaxing it as to the other. In a case like the present, where the importance of the property involved bears no proportion to the importance of the principle, I speak not without hesitation; but it seems to me that a gift of a chattel to a stranger by a person not indebted, unaccompanied by evidence of a design to become indebted, or any badge of fraud to deceive subsequent creditors, would not be within the true intent of the statute. Circumstances may have called for a severer construction in England, which do not exist here; and I am unable to see why a fowling-piece, a trinket, or any thing else, presented by a gentleman of indisputable opulence to his friend, should be liable to execution for a bill subsequently run up by the donor

with his butcher or his baker. There was no debt in the present case to be attached; and the garnishee is entitled to judgment.

Judgment of the court below reversed, and judgment here for the defendant.